Yes, thank you. Good morning, your honors. May it please the court, Dana Duncan on behalf of Lawrence Wiebusch. Before this court is a single issue. Did the appeals counsel err by not accepting and finding the report of Dr. Gita Honda new material and relevant to the period before the hearing? While this alone would be normally the issue, strangely it's tied to a separate issue. And that is the ruling by the district court made sua sponte that the five day rule precluded this report. As the district or at the district court, the magistrate found this Honda or Dr. Honda's report violated the five day rule and administrative regulation change adopted to avoid having late medical evidence submitted right before the hearing, reducing the effectiveness of an ALJ's ability to review and be able to process it in time for a complete hearing. The court and not just in this court, but I will note that the there are multiple decisions that have been issued by the district courts in this circuit, applying the five day rule. While ultimately this court should address the district court's misapplication of the law and then move on to the actual application of whether Dr. Honda's report should be deemed new material and relevant. And then applying the Myers factor, whether there is error meriting this matter or the report being submitted to the appeals counsel for review and consideration under the sentence six standard. Harmless error. You say the Honda questionnaire was excluded or rejected by the appeals counsel, but didn't that counsel consider the report and found that it didn't change anything? It did, but the problem is, is then you have an issue with the Myers standard. It doesn't really say what the information is. That's the problem is there's no specific findings as to why applying Myers versus Astru. The court is to review the record as a whole. And in the Myers decision, it says if there's unconverted or a controverted evidence in the record, then the matter is reversed in the matter sent back for evaluation of that evidence. When appeals counsel does not provide articulation. And that's what we have in this particular case. So how did 2012 and 2015 sleep studies support this Handa questionnaire? It does. And she outlines exactly what it is. And she actually is a specialist in sleep. And especially renewed by this court's finding or decision in Arrakis, which outlined specifically, and this just carries under the treating physician role by one week. And so therefore, it does apply in this particular case. Did they test or examine the effectiveness of the claimants medication? That I'm not sure about your honor. I think there was some consideration of that. Ultimately, though, the problem was, is that the medication was found or some of the medications had such significant side effects, he was very limited on what kinds of medication he could take. So even with the medications, he was still as he testified falling asleep one to four times a day at random intervals. Well, and just on the last point on that questionnaire, you do say that you complain that they didn't give the appeals counselor didn't give an adequate explanation. But we pretty much have said in our cases, they don't have to, haven't we? Correct. But then that's when the Myers standard applies. And the Myers standard says that what you would then do is you have to review the record as a itself to sustain the appeals counsel's findings. And in this case, what we have here weighing against that is that we have an uncontroverted medical opinion of a treating source that supports a nurse, excuse me, a physician's assistant or nurse practitioners whose report was in there, and which goes on to specifically counter some of the findings that were made by the administrative law judge in the decision. So the overall situation is, is this weighs very heavily for this being the unrebutted or uncontroverted evidence that the Myers court found sufficient to at least merit this matter going back for consideration to the appeals council. You know, the biggest problem I see here, it seems to me is that, you know, all of you have the sleep studies in it, that's here, but they don't seem to support that it's untreatable, this narcolepsy with appropriate medication. And neither of those studies really assess the effect of those medications. You know, they were sleep studies. They weren't medication efficacy studies. They weren't, you know, you see where I'm going with that in a way is you can conduct a sleep study. Yeah, he's got a sleep problem, but the question is, do these medications help? And there's nothing there that assesses that to show a change. Okay, I understand your point, your honor, but the, um, I really can't address it because I don't have, I mean, I'm left with the record that I was given and there really isn't a whole lot. And there was no questions done. See, the problem is that then that questionnaire becomes inconsistent with what we know to be other substantial evidence in the record. And so, you know, even the client said he was able to control his own symptoms with certain medications and dosages, uh, and he even named one of them. And, and then, uh, so, so that's the problem is, is yeah, you have a study and it's uncontroverted, but it does not go to the issue that's here. Well, I think that the argument I would make your honor, isn't just general. Uh, the fact of Dr. Honda's report would be treating him for this condition indicated that he was continuing to have these problems and noted them in her report more than implies that it wasn't being a very early, the treatment provided was not being, uh, or was not very effective. Otherwise there wouldn't be this report three months after the fact indicating that he was continuing to have issues and that the, these, uh, periods of, uh, falling asleep or continuing. So I just want to make sure I understand this. It seems to me, if you have a doctor that says that, well, uh, it's the situation is controlled it when he's taking his medication in full compliance with his medical regimen and you produce a study on sleep, but it doesn't address that. That seems to be a disconnect as to, you know, how does that change anything until you actually, uh, actually, uh, get to that? Well, as I indicated again, the report itself, um, addresses, um, uh, that particular aspect, um, and it says that the problems continued, um, even though he was being treated and medicated. Well, that's probably where I want to make sure we're clear on. It seems to me, Dr. Handa herself seemed to suggest that the reason, uh, he wasn't getting these results from his drugs was because he was in non-compliance. And, you know, that in and of itself seems to indicate there is some importance here beyond just diagnosing the problem. If he, if it is treatable, the question is, does this problem exist in a treatable fashion and is he complying with the treatment there? That's what seems to be missing to me to make the connect here. Okay. And while I, or that might be the case, we don't know that's what the appeals council ultimately found is the reason for excluding Dr. Handa's report. What we have is no information whatsoever as to the basis of why they excluded the report. And I, it, I can understand the court's concern, but again, this is a situation where we don't have any idea specifically what the findings are. The ALJ didn't really address a lot of this. He basically gave less weight to this other medical opinion, uh, because of it. And as a result, we're kind of stuck in this, uh, kind of, uh, period of, uh, kind of a nether, uh, region that we don't understand exactly what's going on. We, we, you and I, I thought we sort of agreed that at least case law said that appeals council doesn't have to explain why. Correct. We go to the ALJ and has already considered these, uh, sleep studies that were relied upon by Dr. Handa. Correct. It says it supports a narcolepsy diagnosis, but what it doesn't do is to indicate that, uh, what the effect of having prescribed medication compliance has on it. That, that's, that seems to me to be the problem with at least where we are now. Well, the first question your honor is, is with Mr. Whybush taking the appropriate level of stimulant medication, is it nevertheless more, most probable that he would have fall asleep at unpredictable times during the work portion of the case? Right there, your honor, that issue is resolved as far as this goes from Dr. Handa's report at record page seven. So, you know, I think that's sufficient from a treating source to trigger all aspects of this case and specifically all of that. Now, um, I am, uh, unfortunately not, I think I'm, I have now lost or have no more time available, but, um, yeah, you're correct. Um, I had a lot of more inference stuff I wanted to address, but all right, thank you. All right. We have time reserved. All right. Ms. Petty. Good morning, your honors. And may it please the court, Shannon Petty for the commissioner of a straightforward and narrow issue. Does Dr. Honda's November, 2017 questionnaire, which contains only a 20 word response, does not cite to anything about the efficacy of medication and proposed Mr. Whybush was so impaired since 2012, four years before Dr. Honda began treating him and a period where he worked the day shift 12 hour days full time and did so without problem per his own testimony now deprive the ALJ's decision of substantial evidence. The answer is no. The mere fact that this document was signed by a treating source does not undermine the ALJ's decision here, given the weak content therein. Now I'd like to first briefly define how to look at this case because there were arguments focusing on the new appeals council evidence regulations and the five day rule. The agency here considered every document submitted. The five day rule arguments are not relevant because the five day rule was not applied here. No agency adjudicator declined to consider this document because it was not submitted until after the ALJ's decision. And the changes to the appeals council evidence regulations have not changed this can and should continue to apply the substantial evidence and fact specific inquiry it did in cases like Meyer when evaluating cases where evidence is first presented to the appeals council. Now to just very briefly clarify the quote five day rule actually refers to 20 CFR 404 935 in the regulations and that regulation now requires claimants to either inform the ALJ about or otherwise submit all evidence no later than five business days before the hearing unless an exception applies. There's a corresponding requirement at the appeals council level I'll speak about in just a moment but the key point here is that that version of the regulation was not in effect until several months after Mr. Wybush's March 2017 hearing. The ALJ here considered every document submitted. She left the record open for five months and accepted all of Mr. Wybush's post-hearing submissions. She even sent him for two additional consultative examinations at his request even though the record already contained a consultative examination. So the ALJ here considered everything that was presented to her. Now Dr. Honda's questionnaire was presented to the appeals council and the appeals council considered it. There is a corresponding requirement at the appeals council regulation that now explains that the council will grant review if among other factors a claimant shows good cause for not informing the ALJ about or submitting the evidence in accordance with 404 935 but again 404 935 that version was not in effect at the time of Mr. Wybush's hearing and the appeals council considered this document despite the timing of the submission after the ALJ's decision. The five-day rule was not applied here rather the council looked at it and found it did not create a reasonable probability of changing the ALJ's decision a point the district court also affirmed and even the magistrate judge here assumed that there was no issue with when this questionnaire was submitted in relation to the ALJ's hearing and decision in the first full paragraph on page 48 of the joint appendix. So the five-day rule was not implicated in this case. The problem was not the timing of the submission but the content of it and the content here is what was lacking. It contains just 20 words of response suggest Mr. Wybush was so impaired since 2012 when he was in fact working full-time 12-hour days during the day shift and testified he did so without problem and it's devoid of meaningful support because it does not cite to either Dr. Honda's own treatment notes or any evidence addressing the effectiveness of treatment which is what the ALJ relied on here. Now in Meijer this court explained that the standard where evidence is first tendered only to the appeals council is for the court to review the full record including the additional submission to test the ALJ's decision for substantial evidence and applying that test to the facts of this case the ALJ here found that Mr. Wybush could work despite his narcolepsy because treatment was effective when used this was on page 11 of the joint appendix and Dr. Honda's questionnaire does undermine that. Turning to the questionnaire at page 23 of the joint appendix it contains just four questions and only a 20 word response. In question one Dr. Honda responded yes to a pre-drafted question asking if Mr. Wybush could fall asleep at unpredictable times during the workday despite appropriate medication but this conclusion and the support cited for it are the remaining questions that purport to provide rationale here. In question two Dr. Honda cites a hypersomnolence diagnosis this was already before the ALJ. The ALJ found hypersomnolence to be a severe impairment and considered it in the work capacity assessment and as the fourth circuit has explained in Gross versus Heckler a diagnosis alone is not enough there must be a showing of related functional loss. Now in question three this is the only other evidence Dr. Honda cites in support of her conclusion. She cites two sleep studies one from 2012 and one from 2015. Both of these predate when Dr. Honda began treating Mr. Wybush in February of 2016 so she's not even pointing to anything from her own treatment records for and as acknowledged these studies they were also before the ALJ they support the diagnosis of narcolepsy but did not address the effective effectiveness of treatment for the condition. Which that's the difference in Miss Petty that's the difference in it Dr. Honda gives some medical explanation of the of the consequences the effective she says it cannot be treated with but the studies as you said gave the diagnosis and you agree with the diagnosis that's not disputed the question is what is the prognosis you see there's diagnosis then there's the treatment okay you try the treatment but what Dr. Hanna is saying that the prognosis is going to random time that was not before until before that that's that's that's the treating physician now you may disagree with that but but that's important it is the studies I would agree with you this would make well the studies don't even show he has it that may be something else and it doesn't matter that it happened before she treated him physicians look at uh chemical studies all the and prognosis but the prognosis of us is important because that tells you and she says clearly even if medicated even if medicated not if he's compliant but even if medicated assuming such he still will have the prognosis of sleeping at random times and it can't be controlled that's what she says you can't whisk that away your honor you're correct she does respond to that question in the affirmative however the support two points uh to respond to that one the support that she cites within this questionnaire does not support her own conclusion again those two evidence are the only objective findings that she cites they're the only records she cites in fact and none of those records speak to the effectiveness of treatment which is what the ALJ relied on here not only that but the record contradicts Dr. Honda's conclusion let's walk through it briefly the record shows that Mr. Wybush was diagnosed with narcolepsy in late 2012 prior to the relevant period however his medication was effective when he worked the day shift Mr. Wybush worked the day shift for more than a year he worked 12 hour days full time and he testified quote he wasn't having any problems on the day shift end quote this is on page 43 of the transcript and page 427 now during that time he reported that Provigil and Mirapax were quote quite effective for him in March of 2013 now he was later transferred back to the night shift fell asleep at work and was terminated however falling asleep during the night shift does not automatically preclude daytime work and Mr. Wybush confirmed that Provigil continued to work well for him after this time for example in November of 2013 so nearly four months after he stopped working he confirms that Provigil quote is working well however he'd been out of the medication for about a month this is on pages 466 469 492 and 543 of the record now this was during an initial consultative with the Veterans Administration and the VA prescribed a different first-line medication for this condition they prescribe Ritalin and so the treating neurologist at that time started Mr. Wybush on a 30-day trial of Ritalin it looks like Mr. Wybush was without medication for most of 2014 as he received that 30-day trial in November 2013 and nothing thereafter however in late October of 2014 he began Provigil the same medication he confirmed to the VA was quote working well four months after he had stopped his job and the record shows that it continued to work well for him until he reported in June of 2015 that it had been less effective quote for a month or so and this is on page 905 of the transcript importantly providers at that time linked that complaint to Mr. Wybush's other medications three of which caused sedating side effects and Mr. Wybush was taking each of those so his treating neurologist recommended adjustments to those medications including discontinuing use of them during waking hours however Mr. Wybush testified on page and that recommendation by the way is on page 903 of the transcript Mr. Wybush testified however that he continued to take some of those medications during the day at his administrative hearing now psychologist Dr. Honda began treatment in February of 2016 her plan was to switch to Adderall and if Adderall did not work she planned to switch to Nuvigil which was another medication Mr. Wybush previously confirmed worked well for him in the past Dr. Honda documented some ongoing issues with compliance in 2016 and she did adjust Mr. Wybush's Adderall in November of 2016 however she never made the switch to Nuvigil suggesting that Adderall was adequately controlling his symptoms so she didn't follow through on her treatment plan if Adderall was in fact not working and her final treatment note of record confirms this point excuse me in February of 2017 so just one month before the hearing in this case Dr. Honda indicated that medication caused fidgeting and restlessness for two to three hours after the final dose and insomnia if he took the medication later the inability to fall asleep it makes no mention that the medication was ineffective and Dr. Honda also gave Mr. Wybush information on vocational rehabilitation at that appointment which suggests she believes some work was possible this is on page 1190 and 1193 of the transcript and so the record here shows and supports the ALJ's conclusion that treatment for narcolepsy was effective when used Dr. Honda's questionnaire does not undermine that and in her final um in question four the final question in the question does undermine it the question is how much weight should be given to it it certainly undermines how would you suggest that how could you say it doesn't undermine it does undermine the question is how much weight you give to it because what she's saying she's a physician you know she's she's I mean in terms of his treating person and we give a lot of weight to that right how many did he have an IME here uh your honor before did he have an IME an independent medical examination yes he had three there were nine doctors did they treat him any of them none they treat him anybody they didn't treat him right there were nine doctors who considered Mr. Wybush's narcolepsy six of whom offered opinions including a treating nurse practitioner um and then the ALJ also sent Mr. Wybush for two additional consultative examinations after the hearing and there was already a consultative examination in the record at that time so there were three evaluations in the record here and to speak to your point about the treating source it is absolutely correct that Dr. Honda is a treating source however it's not merely the source that's relevant it's the content and the factual content therein is not adequately supported and is is contradicted by the record again Dr. Honda indicated Mr. Wybush was so impaired since 2012 when he was working 12-hour days full-time during the day shift and testified on page 43 that he had no problems but with that while she cites to a sleep study she does not cite to anything including her own treatment notes addressing the effectiveness of treatment and Dr. Honda's final treatment note indicates again only fidgeting and restlessness for two to three hours after the final dose of medication with insomnia if the medication was taken later an inability oh that's very well all this very well and Ms. Petty you're doing a great job you know the record very well uh but we're you I'm a judge you're a very adequate and very competent lawyer but we're not physicians we don't do that in this case this is very important cases the man lost his job and you say well you know he fell asleep at night and then you say well it doesn't mean you can't work at a day where apparently somebody thought it was enough that falling asleep at night was you look at this well important important matters in terms of in that sense and this is a treating doctor who says this emphatically that medication is not going to solve his narcolepsy it's not going to do we can't wish it away and it is important and that's the thing I think about the way we deal with mental issues in this country in general is just incredible you have these cocktails of things where you treat this but it has contraindications so yes maybe we keep having these cocktails of things you're doing this you're doing that but what toll is it on a person's psyche and their ability that quality of life and those things treating physicians said listen enough is enough medication is not going to solve this man falling asleep and why can't and why should we not in terms of fairness and due process send this back they didn't have this before and you might be right that they look at it and examine her and those things and well you know on the balance but it's bereft of something that's very important why is it not and like I said this is not discounting you I think you've done a great job but we're not experts and his treating doctor says this is an important matter and how do you just ignore it should go back you didn't have that when you when you heard this you didn't give him an appeal that was done I know we can't that's not in our wheelhouse but certainly sending this back for remand is go ahead your honor I see that I'm I'm out no no I've given you the long comment so you can go ahead please I confess to mine no there's a question at the end of it absolutely your honor this court can absolutely consider this questionnaire which again is not well supported and is contradicted by the factual record now as an initial point the appeals council did consider this document they found however it did not create a reasonable probability of changing the outcome here appoints the district court concurred with on page 65 of the joint appendix however acknowledging that this is a treating source opinion this is not a document that has to be weighed in the first instance before this court can conduct its substantial evidence review in Meyer this court did not hold that remand was required for the agency to weigh an opinion anytime it was not presented to the ALJ Meyer was very careful to carve out a fact-specific holding noting that the evidence in that case presented a problem but that the court can't affirm when substantial evidence considering the record as a whole including the additional submission supports the ALJ's decision and it was the particular record in Meyer the content of the submission and that ALJ's particular emphasis on the lack of a treating force opinion that was relevant indeed the very first sentence of Meyer opens by acknowledging that Meyer suffered severe injuries in an accidental fall Meyer had a 25 foot fall multiple reconstructive surgeries and I physical therapy session so we just we don't have that type of record here you know why because right that's the whole my whole point we can understand things that are physical someone falls down to break a limb but it's so difficult it seems like to understand the mind and the mind controls all of that it is the it is the epicenter of life and quality of it and so you're right nobody fell down there's no broken bones it's not that it's just a psychologist saying that no it is very important it is the essence of life oh okay I'll let you go you you counsel you you wanted to say something I want to cut you off oh I'm so sorry I have just one more point um sure go ahead um thank you your honor for the opportunity to go a little bit beyond my time here um absolutely honor you know the commissioner is very mindful that the facts of each particular case are what are most relevant you know there's no categorical rules here it's simply the commissioner's position that Dr. Honda's questionnaire which was considered is not supported internally and it's contradicted by the record including multiple statements from Mr. Wybush that medication was effective and Dr. Honda's most recent treatment notes showing again only fidgeting and and and restlessness for a couple of hours with no mention of the medication being ineffective she never changed her treatment plan which would have happened if the medication was not working and she also referred Mr. Wybush to vocational rehabilitation suggesting that she thought some work was possible a final point we note is that the remedy in cases where there's additional evidence presented after the ALJ's decision is twofold one like here a claimant can submit it to the appeals council for consideration and subsequent appeals the claimant can also file a new application submitting that same evidence and that was also done here um your honor it's just our position that considering the weak content in Dr. Honda's questionnaire it was considered but it did not deprive the ALJ's decision of substantial evidence given concert reports that medication was effective Dr. Honda's own treatment notes and her conclusion that he's been so impaired since 2012 when he worked full-time days during the day shift for 12 hours and testified he did so without problem thank you for your time speak if you will to the standard of review that we have here and how that might impact our decision absolutely your honor the standard of review here is exactly that which was articulated in Meyer where evidence is presented for the first time to the appeals council and the council denies review and includes that evidence in the record the court tests the ALJ's for decision for substantial evidence considering the entire record including this additional submission and applying that test here it is the commissioner's position that based on the relatively weak content of Dr. Honda's questionnaire it does not deprive the ALJ's decision of substantial evidence it's further the commissioner's position that Meyer did not hold that the court needs to remand for the you know for the agency to weigh an opinion anytime an opinion is presented to the you know presented after the ALJ's decision that couldn't be the rule and you know very briefly although not cited in our case I would be happy to prepare a 28j letter I found a case in the 10th circuit Vallejo versus Berryhill that is also very instructive here the Vallejo court the Vallejo case had the same factors that are at play a treating source opinion that was not presented to the ALJ that purports to undermine the ALJ's decision and that was the only treating physician opinion of record however the 10th the 10th circuit there explained and let me just very briefly quote that they rejected the notion that the matter had to be remanded for the agency to weigh the case in the first instance and instead remanded to the district court to determine consistent with the test articulated in Meyer quote if substantial evidence in the administrative record which now includes an additional opinion supports the ALJ's decision and it's our position that that's the standard to be applied here your honor so it was remanded to the district court yes the posture of that was originally that the district court remanded to the agency to weigh the opinion in the first instance that was appealed to the 10th circuit 10th circuit said no no we don't have to remand to the agency to weigh in the first instance because citing the same logic applied by this court in Meyer it's only when the appeals council gives a notice of determination or decision under the regulations that it has to articulate its finding of facts and its rationale in that instance the weight afforded to a treating source opinion but when the appeals council simply denies review which is what was done here it quote was not required to follow the same rules for considering opinion evidence as the ALJ followed in quote that's Vallejo V-A-L-L-E-J-O versus Berryhill 849-F-3-D at 951 and specifically at pages 955 through 956 and again if the court would like a 28-J letter on that I'd be happy to provide it so the standard here though is to test the ALJ's decision for substantial evidence considering the entire record including the additional submission from Dr. Honda and it's the commissioner's position that even considering this as a whole it still continues to support the ALJ's decision and the court should affirm all right thank you thank you very much your honor miss Duncan you have some time thank you um I I would like to just briefly kind of first of all the issue of the five-day rule was only brought up because it seems like the five-day rule she's put it off the table I mean you can have your case where you want but you only have five minutes it seems like she just told you that's fine we're gonna spend five minutes on that that's why you know you're gonna start something that's already there okay go ahead all right thank you as far as the rest goes there's one aspect of this first of all the claimant Mr. Weibusch was on tramadol and other heavy doses of medication which according to the record and I mean I could provide those supplementally to show where all these other medications cause drowsiness when you already have narcolepsy and you have multiple other medications you're taking that cause sleepiness I mean it only makes sense that it's going to be very difficult at times to regulate even when the medication for narcolepsy is effective and there are points throughout the record that say that it's not and I've cited some of those in my reply brief one thing that's constantly lost in these cases is the fact of this social security law is as I've often told associates starting the duck-billed platypus of law because it doesn't match anything else and the cases of sims and car addressing issue exhaustion the supreme court's outlined all the things that are different these are inquisitive or inquiring situations a law review article 29 george mason law review by dr by john c dobbin will be released next week he uses car and sims to outline that there's some things fundamentally wrong with how we consider these cases and alj and under sims of the appeals council acts as a judge a representative of the government who can cross-examine and review or pick apart evidence and is also an advisor and required to rank or by regulation to fully develop the case to see that a fair hearing exists regardless of whether the claimant is represented by council or otherwise so so you you make i think your points are well taken uh what i'd like for you to direct your attention to what looks to me when i look at it is this forgiving nature of the this aoj's decision uh rested on substantial evidence and uh what is it is more than a scintilla of evidence but less than a preponderance and when you're looking at uh conflicting evidence that reasonable minds could disagree because there's conflicting evidence in the record i i'm i'm sympathetic to the cause that you know physicians positions are given a lot of weight um but here the at least the the record and i could let you go on but i want to make sure you address my concern what what the record seems to indicate you got two sleep studies that come up nothing about medication and then you got the naked opinion well medication uh won't help but there's record evidence all through it that medication has controlled this you got a whole year he's worked with this medication and also non-compliance is the problem that he's having and and it's that is it is that standard of review the substantial evidence standard of whether this rests upon evidence that uh that supports the decision understanding the case law makes that clear that is more than a scintilla of evidence but less than a preponderance so address it from our job here not what we wish the evidence we could do what we would do as but address it from the perspective of what we have to do as an appellate court uh constrained by that standard thank you again um dr honda's report indicates a direct answer to the question she was a sleep medic or an expert she had been treating the claimant for a number of years if the evidence alone was not sufficient to establish controlling weight um it was sufficient enough to establish uh consideration of the various factors considering that part of the reason why the uh nurse practitioner's report was rejected was a lack of support in the overall record we now have a situation where we have a treating source an expert on that subject who says basically the same things and outlines in detail or uh or at least uh the nurse practitioner's provides more detail than dr honda's does but at least that's enough i understand that this we're not asking for award of benefits or that the matter should be given you know it's a matter of whether or not dr honda's report is sufficient to raise questions as to the validity of the underlying case it talks in there in detail about credibility and subject mr duncan yeah i don't think what you've just stated is the question as my colleague just told you what we're doing here is deciding whether there is sufficient evidence to meet the substantial evidence test that so that's what we're deciding not whether there's some doubt has been placed on this right yes you disagree with that no i do not disagree it's not an issue of doubt what it is is it's an issue of how or whether this is sufficient to tip the scales enough that this should be re-evaluated but there's no sufficient evidence to support it if this isn't it's sufficient to do that i i would argue it is simply because of her nature of as an expert at her long treatment history and the fact that she did make a statement opining specifically that even with medications being appropriately provided he would continue to have periods of time where he'd fall asleep we're not talking about having to establish four or five times i would assume by most employer standards one time falling asleep at the job is likely to determination two is definite and um that's that's where we are these it's hard to provide the type of evidence you know it's not like we can hook up an mri and show the medications effective when the medication is not effective what we have here is a situation where we have a medical expert who specifically says that it will continue to happen regardless of the medications and compliance with the medications but you can determine through a medical efficacy study as to whether an individual is taking medicine first you can ask the individual is it taking it then i think as well as i think you pretty much can take tests to indicate is this individual is that medicine in his system and that's the that seems to be that's the disjoint here there's nothing here except two sleep studies and nothing that even maybe her questions you know to him that if you said well based upon the fact that he indicates he's taking his medication there's nothing to indicate otherwise i conclude it doesn't make a difference all it is is doesn't make a difference medical studies and then you get all the information in the record that indicates while he's taking the medication and complying you know his condition is good i mean so again it's not a question of what i would do as aoj and may have gone the other way may agree with it but the question is is that aoj's decision supported by substantial evidence and that's a pretty forgiving bar and from what i see uh and you know so we just kind of have to do our job i understand and i what i would go back to again is the framing of the question from dr honda is let's assume that he is taking all of his medication and everything is in compliance um dr honda is indicated he is still likely to fall and that's what we have i mean it the the gist of how effective the medications are or are not is um resolved by the fact that she said even if they are effective he's still going to have the problem that's evidence but the question hasn't been resolved because there's evidence the other way you know i i think the point maybe it's duncan you sort of lost over to someone but it's very important it's not only just that dr hannah would give treating treating health care providers uh evidence but also they gave little to no way to the nurse practitioner's opinion that he would fall asleep in an upright position said because you know he you know he or she did not have the gravitas but this also by this opinion of judge hannah that would be able to restore to some degree so so it's almost like substantial evidence is not numerosity that's a difference okay you may have several imes and those kind of things five of them that's numerosity but when you have someone who's a treating physician that's in terms of so that was the case it's substantial because we have five people that as an ime who never seen the person for example that's in there it's numerosity but wait in other words you would never win a case because i've never seen a case yet that in these cases where they didn't somehow on the other side said well i think they're fine there's nothing wrong with them you know people have to almost be half dead in some cases you know kidney problems and all kind of hypertension well you know they're still breathing you know so somebody so is that substantial you know the treating physician no i've tried this these things because you're giving people stimulus that's a science you said okay i can keep you awake maybe but the stimulations that's required to do so are contraindicated to your health at some point that's what treating physicians do oh yeah i can keep you you know back asomnia you know the person is asleep but what does that do in long term but it's not so i don't know if it's substantial as long as we can say something would keep you awake that's substantial the treating physician said no balancing what is required then we get to a point enough is enough whatever you do in terms of reasonable treatment he would still fall asleep that's important and that's wavy i think at least for a remand to look at this in that in a sense that's what it argued and i my my dear colleagues are absolutely right we are if you will constrained by that we're not constrained though by the nature of the cases involved this is a this this case is a psychological case too you know people just think falling asleep knock them you know it's it's a it's it's a mind too is a lot of things and you're giving is a stimulus i think in our correct mr duncan are these basically stimulants that you're giving the person correct so and and you're correct your honor and i did note that in my brief that this really is supportive of the um the opinion of the nurse practitioner that was rejected by the alj and many of the reasons provided for rejecting that report were counter contraindicated by dr han's report or honda's report and so i i would argue that the those points are enough that question whether a reevaluation and really this is basically a harmless error standard as far as i'm concerned is whether or not this is likely to result in the standard for the appeals council is this likely to result in a different outcome well now you have two medical opinions saying the same thing one by a treating source applying the treating physician role it very well may and that's all this court has to do is indicate that this is enough that this may result in a different matter it doesn't necessarily mean it has to because it could very well go back and be handled and shown that uh that it is insufficient but the issue is not that as much as it needs to go back to have further evaluation all right thank you mr duncan thank you miss petty you both do a great job and these all these cases are tough and you ably handle all and very well thank you so much uh you're virtual so uh so we couldn't shake your hand anyway but know very well much that we appreciate your arguments and we wish you well and stay safe thank you so much thank you your honor have a nice day thank you and we'll ask the clerk to adjourn the court until this afternoon this honorable court stands adjourned until this hour
judges: Roger L. Gregory, Diana Gribbon Motz, James Andrew Wynn